UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| |
|---|
| THE GALLUP ORGANIZATION,<br><br>        AND<br><br>ROBERT L. NIELSEN,<br><br>    Plaintiffs,<br><br>     v.<br><br>THOMAS A. SCULLY, *Administrator,*<br>*Centers for Medicare and Medicaid Services*,<br><br>        AND<br><br>JOHN DOES 1–5,<br><br>    Defendants. |

Civil Action No.  03-849 (CKK)

**MEMORANDUM OPINION**
(October 5, 2005)

Plaintiffs The Gallup Organization and Robert L. Nielsen bring suit against Thomas A.

Scully, Administrator of the Centers for Medicare and Medicaid Services ("CMS") and five

unnamed individual federal defendants, alleging violations of Plaintiffs' constitutional rights to

free speech, free association, and due process; the Administrative Procedure Act, 5 U.S.C.

§ 555(c); and CMS's governing laws and regulations.  Before the Court is a motion to dismiss for

failure to state a claim, or in the alternative a motion for summary judgment, filed by Defendant

Scully.  Upon consideration of the Plaintiffs' complaint, Defendant's aforementioned motion,

Plaintiffs' opposition, Defendant's reply, and the applicable law, the Court shall grant

Defendant's Motion for Summary Judgment.  Additionally, Plaintiffs request leave to take

discovery pursuant to Rule 56(f) in their opposition to Defendant's motion.  The Court shall deny

Plaintiffs' request.

## I: BACKGROUND

Plaintiff Gallup is a corporation engaged in the business of helping hospitals and other

healthcare clients assess patient satisfaction through the use of data collection and polling.[1]

Compl. ¶ 4.  Plaintiff Nielsen is a Managing Partner of Gallup and Gallup's Health Care Program

Leader.  Compl. ¶ 4.  Defendant Scully is the Administrator of the Centers for Medicare and

Medicaid Services ("CMS") in the Department of Health and Human Services ("HHS").  Compl.

¶¶ 1, 5.  Defendants John Does 1–5 are unidentified, unnamed federal officers or officials whom

Plaintiffs claim are responsible for Plaintiffs' injuries.  Compl. ¶ 6.  Defendants are being sued in

their individual capacities.  Compl. ¶¶ 5, 6.  Plaintiffs are suing Defendants pursuant to *Bivens v.*

*Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  Compl. ¶ 1.

The Complaint alleges that since the summer of 2002, Defendants "have been on a

mission," Compl. ¶ 10, to preclude Plaintiffs from the process of developing a new standard for

surveys assessing how well Medicaid and Medicare patients are being treated by hospitals and

health care professionals.  Compl. ¶¶ 7, 8.  In late January 2003, CMS submitted a request to the

Office of Management and Budget ("OMB") for emergency approval of the use of a new survey

instrument.  Defendant Scully's Statement of Material Facts as to Which There is No Genuine

Dispute ("Def.'s Facts") ¶ 12; Defendant's Exhibit ("Def.'s Exh.") Q.[2]  A notice was printed in

---

[1]  The Gallup Organization is best known for the Gallup Poll.  Compl. ¶ 1.

[2]  Because this is a Motion for Summary Judgment, this Court is relying on a select few undisputed documents in order to decide this case.

the Federal Register on February 5, 2003 indicating that comments related to the proposed survey

must be received by February 20, 2003.  Def.'s Exh. R.  Plaintiffs contend that Defendants

colluded with the National Research Council ("NRC")/Picker, a publicly traded vendor of patient

satisfaction survey services, in order to increase NRC/Picker's financial success.  Compl. ¶ 1.

In an email dated March 5, 2003 to Brenda Aguilar of OMB, Mr. Nielsen stated that

CMS's alleged "collusion with NRC/Picker is blatant," and requested that OMB "deny

emergency status [for approval of the survey] until a thorough investigation can be conducted."

Def.'s Exh. X.[3]  Mr. Scully sent a reply email to Mr. Nielsen and Ms. Aguilar which stated that

Mr. Nielsen was "out of line" and that he "should be MUCH more careful with [his]

accusations."  Def.'s Exh. Y.[4]  Mr. Scully added that he "would like to investigate" Mr. Nielsen.

---

[3]  Included here is the text of the email sent to Brenda Aguilar from Mr. Nielsen.
Dear Ms. Aguilar,

The attached was recently released from AHQA, the official organization of CMS funded CIO's.  The collusion with NRC/Picker is blatant, including links to NRC/Picker's website. For CMS to claim that the process is an open one is clearly a sham.  The collusion between CMS and a publicly traded, NRC/Picker, which is using this alliance to market to US hospitals where they have virtually no market share, is obvious.  CMS, in the face of overwhelming evidence, refuses to publicly deny their alliance with NRC.  We at Gallup ask you to deny emergency status for this project until a thorough investigation can be conducted.

Bob Nielsen
Managing Partner & Healthcare Program Leader
The Gallup Organization

Def.'s Exh. X at 1.  Mr. Nielsen also carbon-copied representatives at its competitors PRC and PressGaney, and Mr. Scully and Tim Trysla of CMS.  Def.'s Exh. X at 2.

[4]  The text of Mr. Scully's email follows:
You are out of line—and out of your mind.  I [sic] you are such a weasel that you can't discuss this with me like a normal human I have no sympathy for you.  I worked at OMB for 4 years—you don't think I understand the bullshit you are up to.  Would you like to discuss this with Mitch Daniels??  I will be happy to arrange it.  You should be MUCH more careful with your accusations.  Brenda, if you meet with this guy it will be the last time I ever speak to you about CMS issues.  I would like to investigate this idiot—I am the most open person in Washington and this JERK has never called me.

Def.'s Exh. Y at 1.  It is unclear from the document whether Mr. Scully carbon-copied representatives at Plaintiffs' competitors PRC and PressGaney, and Tim Trysla of CMS.  Def.'s Exh. Y at 2.

Def.'s Exh. Y.  Mr. Scully further directed a statement at Ms. Aguilar indicating that if she met

with Mr. Nielsen, Mr. Scully would not discuss CMS-related issues with her in the future.  Def.'s

Exh. Y.  In an affidavit, Mr. Nielsen affirms that the email sent by Mr. Scully "was an affront to

[Mr. Nielsen's] professional and personal reputation . . . and most significantly, it was sent to the

White House (OMB) threatening damaging repercussions if [he] were to meet with officials from

the government to complain about collusion, namely Ms. Aguilar."  Plaintiffs' Exhibit (Pls.'

Exh.) 4, ¶ 24.  Mr. Nielsen also asserts that Gallup's annual gross income from hospital patient

surveys is $25 million and its annual gross income from government contracts is $18 million.

Pls.' Exh. 4, ¶¶ 25, 26.

On March 11, 2003, Mr. Nielsen wrote an email to Thomas Reilly, a CMS employee,

attaching a briefing summary developed by Gallup on the new survey instrument.  The briefing

summary indicates that the methodology used to develop the survey instrument was poorly

developed and that it will result in higher costs to hospitals.  The briefing summary also states

that the "methodology is basically derived from that of a private, publicly traded corporation that

has an apparent alliance with CMS."  Def.'s Exh. AA.  On May 9, 2003, OMB approved the

emergency request.  Def.'s Exh. BB.

Plaintiffs allege that Defendants deprived Plaintiffs of their constitutional rights to free

speech, free association, and due process by preventing Plaintiffs from speaking out about the

alleged collusion between Defendant Scully and Picker, by preventing Plaintiffs from speaking to

OMB officials about alleged unlawful government activity, and by preventing Plaintiffs from

associating with competitors they alleged to be likewise harmed by collusion between Defendant

Scully and Picker.  Compl. ¶¶ 1, 11.

Plaintiffs' complaint includes three counts. The first is a request for damages for not less than $5,000,000.00, in which Plaintiffs request economic, compensatory, and punitive damages, due to Defendants' alleged violation of Plaintiffs' constitutional rights to free speech, free association, and due process; the Administrative Procedure Act, 5 U.S.C. § 555(c); and CMS's own governing laws and regulations. Compl. ¶¶ 16–18. The second count is for declaratory judgment determining that Defendants' actions are unlawful based on Defendants' alleged violations of Plaintiffs' constitutional rights to free speech, free association, and due process; the Administrative Procedure Act, 5 U.S.C. § 555(c); and CMS's own governing laws and regulations. Compl. ¶¶ 22, 23. The final count is a request in the alternative for injunctive relief to prevent Defendants from further violating Plaintiffs' constitutional rights to free speech, free association, and due process; the Administrative Procedure Act, 5 U.S.C. § 555(c); and CMS's own governing laws and regulations. Compl. ¶ 25. For the reasons set forth below, this Court will grant Defendant Scully's Motion for Summary Judgment on each of the counts.

## II: LEGAL STANDARD

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The adverse party's pleadings must evince the existence of a genuine issue of material fact. *See id.* at 247–48. To be material, the factual assertion must be capable of affecting the

5

substantive outcome of the litigation; to be genuine, the issue must be supported by sufficiently admissible evidence such that a reasonable trier-of-fact could find for the nonmoving party.  *See id.*; *Laningham v. United States Navy*, 813 F.2d 1236, 1242–43 (D.C. Cir. 1987).  Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment.  Rather, the nonmoving party bears the affirmative duty to present, by affidavits or other means, specific facts showing that there is a genuine issue for trial.  *See id.* at 1248–49.  The adverse party must do more than simply "show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### III: DISCUSSION

In Defendant Scully's Motion for Summary Judgment ("Def.'s Motion"), he asserts the affirmative defense of qualified immunity.  As an initial matter, Mr. Scully must meet the criteria of a person generally entitled to assert a defense of qualified immunity.  In *Harlow v. Fitzgerald*, the Supreme Court held that qualified immunity generally applies to executive officials.  *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982).  The Court in *Crawford-El v. Britton* reiterated this standard when it stated that "the defense [of qualified immunity] protects all officers in the executive branch of government performing discretionary functions."  *Crawford-El v. Britton*, 523 U.S. 574, 587 (1998).  Here, it is not disputed that Mr. Scully is the duly appointed Administrator of CMS, which is a division within HHS.  Compl. ¶¶ 1, 5; Def.'s Facts ¶ 1.  It is common knowledge that HHS is an administrative agency, within the executive branch of government.  Further, it is not alleged in the Complaint or in any other pleading that Mr. Scully was acting in a way other than under his discretionary function.  Mr. Scully therefore meets the

6

requirement of being an officer in the executive branch acting under his discretionary function such that he can legitimately raise the defense of qualified immunity.

The Court explicitly clarified the analytical structure to be used to assess a qualified immunity claim in *Siegert v. Gilley*.  The threshold question for a court to consider in analyzing a qualified immunity defense is whether petitioner in the case has "failed to allege the violation of a clearly established constitutional right" in the first place.  *Siegert v. Gilley*, 500 U.S. 226, 231 (1991).  A court must determine both whether plaintiff has asserted a constitutional right clearly established at the time that defendant acted and whether plaintiff has proffered facts demonstrating that defendant violated such a right before proceeding any further in the qualified immunity analysis.  *Id.* at 232–33.  Because Plaintiffs' iterated facts do not demonstrate that Defendant's actions violated Plaintiffs' constitutional rights, the Court shall grant Defendant's Motion for Summary Judgment without proceeding further with the qualified immunity analysis.[5] It should be noted that since Plaintiffs did not demonstrate a violation of any constitutional claim as an initial matter, the Court need not reach the question raised by Plaintiffs as to whether qualified immunity can be used as a defense to an equitable claim for relief if a constitutional claim has been established in a *Bivens* action.  Nor is it necessary for the Court to consider the question raised by the Defendant as to whether a plaintiff may request equitable relief (as opposed to simply requesting damages) in a *Bivens* action in the first place.

---

[5] If Plaintiffs had established a constitutional violation, which they did not, the Court would next assess the objective reasonableness of defendant's knowledge of the law as set forth in *Harlow*, 457 U.S. at 818–19, to determine if the qualified immunity defense should be sustained or fail.

*A.  Freedom of Speech*

In their Complaint, Plaintiffs state that their constitutional rights were violated when Defendant prevented "Plaintiffs from speaking out about the collusion between Scully and Picker [and] from speaking to officials at OMB . . . ."  Compl. ¶ 11.

First, the constitutional violation alleged, as gleaned from all of the pleadings, is that Plaintiffs' right to petition their government for redress of grievances and their right to free speech were violated.  Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant Scully's Motion to Dismiss, or in the Alternative, for Summary Judgment ("Opp'n") at 14.  While not stated in the Complaint, Defendant notes, and Plaintiffs agree in their Opposition, that the claimed violation stems from a March 5, 2003 string of emails between Mr. Nielsen, Brenda Aguilar of the OMB, and Mr. Scully.  Memorandum of Points and Authorities in Support of Defendant Scully's Motion to Dismiss or, in the alternative, for Summary Judgment ("Def.'s Memo") at 15; Opp'n at 15; Def.'s Exh. X.  In an email to Ms. Aguilar, Mr. Nielsen accuses CMS of being involved in "blatant" collusion with NRC/Picker and requests that OMB deny CMS's emergency status request until Plaintiffs' claims could be investigated.  Def.'s Exh. X.  In response, Mr. Scully sent a reply email to Mr. Nielsen and Ms. Aguilar, stating that "I would like to investigate" Mr. Nielsen and that Mr. Nielsen "should be MUCH more careful" with his accusations.  Def.'s Exh. Y.  Mr. Scully also stated that if Ms. Aguilar met with Gallup then "it would be the last time [he] ever speak[s] to [Ms. Aguilar] about CMS issues."  Def.'s Exh. Y.[6]  Defendant assumes that it is this response from Mr. Scully that Plaintiffs are alleging is retaliatory, and thus a violation of their rights to free speech, in their Complaint.  Def.'s Memo at

---

[6]  Both parties rely upon this email exchange for the majority of their argument.

15.  Plaintiffs confirm that this assumption is correct in their Opposition.  Opp'n at 15.

In this case, Defendant does not contend that Mr. Nielsen's initial email to Ms. Aguilar does not qualify as protected free speech.  Def.'s Memo at 17.  However, in order to demonstrate that a party's first amendment rights have been violated, a court must determine (as indicated by Plaintiffs themselves in their Opposition) that (1) plaintiff was exercising his first amendment rights when filing a grievance, and (2) defendant's response was sufficiently severe as to constitute actionable retaliation.  *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 584 (D.C. Cir. 2002); Opp'n at 15.  In answering the second question, a court should determine whether defendant's actions were " 'likely to deter a person of ordinary firmness from [the] exercise [of the right of free speech].' "  *Toolasprashad*, 286 F.3d at 585 (quoting *Crawford-El v. Britton*, 93 F.3d 813, 826 (D.C. Cir. 1996), *rev'd on other grounds*, 523 U.S. 574 (1998)).  Here, while the email reply written by Mr. Scully may have been offensive to Plaintiffs, nothing was proffered in the pleadings or exhibits indicating that Ms. Aguilar then refused to meet with Mr. Nielsen.  Neither the Complaint, Plaintiffs' Opposition, nor the exhibits allege that Mr. Scully's comments influenced Ms. Aguilar's actions toward Plaintiffs or that there were any other adverse consequences for Plaintiffs resulting from the email.  Since Plaintiffs have not alleged any repercussions resulting from Mr. Scully's email, there is nothing that can then be found to cause a person of ordinary firmness to refrain from filing grievances against Mr. Scully.  Moreover, six days after the email exchange with Mr. Scully, Mr. Nielsen sent an email to another CMS employee attaching a document that was going to be released to the public accusing CMS of having an improper alliance with a publicly traded, private corporation, *i.e.* NRC/Picker.  Def.'s Exh. AA.  Obviously, Plaintiffs were not deterred from speaking out and continuing their critical

commentary.  Plaintiffs have not demonstrated retaliation.  Plaintiffs therefore have failed to

demonstrate that their constitutional right to free speech was violated by Defendant's actions.

Defendant is thus entitled to summary judgment on this claim under the first prong of the

qualified immunity analysis clarified in *Siegert* for failure to demonstrate the violation of a

constitutional right.

### B.  Freedom of Association

This claim also appears to arise from the March 5, 2003 email exchange between Mr.

Nielsen and Mr. Scully, although it is not so stated in the Complaint.  Similarly, it is only after

Defendant gives flesh to the claim in his Memorandum that the Court is able to recognize the

claim.  Plaintiffs, however, do not respond to Mr. Scully's arguments against the claim in their

Opposition.

In order for Plaintiffs to allege a violation of their constitutional right to free association,

Plaintiffs must establish that their individual right to associate with others has been violated in

some way by Defendant's actions.  *See Hoffman v. Jeffords,* 175 F. Supp. 2d 49, 56 (D.D.C.

2001) (finding that plaintiffs' claim dealing with freedom of association failed because "plaintiffs

have made no effort to explain how their individual right to associate with others was affected").

However, Plaintiffs' Complaint merely states that some violation occurred, but states neither

when the violation happened, who violated the right, nor in what manner the violation occurred.

The Opposition does not address this claim other than to generally allege that Plaintiffs'

association with OMB was disturbed by Defendant.  Opp'n at 14.  What is lacking is Plaintiffs'

substantiation of how their right to associate was affected.  Plaintiffs speculate that their

reputation and opportunities for future employment or contracts with the government could be

affected. Opp'n at 13. However, they offer no information to support this claim. Moreover, Plaintiffs themselves must have been injured, not other non-parties such as their competitors. It is therefore irrelevant that Plaintiffs' competitors refused to provide affidavits. Opp'n at 15; Pls.' Exh. 1, ¶7. In fact, the one competitor who did submit an affidavit failed to indicate that he had suffered any adverse action because he had objected to Mr. Scully's alleged preferential treatment of the NRC/Picker model. Pls.' Exh. 3. It is impossible from the Complaint and from Plaintiffs' Opposition to determine on what basis Plaintiffs' freedom of association was violated. Since Plaintiffs have failed to state that a constitutional violation occurred, Defendant is entitled to summary judgment based on the first prong of qualified immunity analysis on this claim as well.

### C. Due Process

In Plaintiffs' Complaint, they merely allege that their due process rights were violated. The Complaint again does not state how, when, or by whom. Furthermore, the Complaint fails to assert a property or liberty interest to which Plaintiffs are entitled that was consequently deprived as a result of Defendant's alleged actions. Defendant assumed in his Memorandum that Plaintiffs' alleged due process violation stems from the March 5, 2003 email because Plaintiffs believe it to be defamatory. Def.'s Memo at 20. Plaintiffs seized upon this approach in their Opposition and claimed that the statements made by Mr. Scully were defamatory, resulting in an injury to Plaintiffs' reputation and in "deprivation of future government opportunity." Opp'n at 13. But, as has been the pattern, Plaintiffs proffered nothing in their pleadings to persuade this Court that actual government employment or contracts have been lost or that Plaintiffs' reputation has been in any way injured. While they state the correct standard, that loss of

government opportunity coupled with injury to reputation is a loss of protected liberty interest, and thus a violation of due process, *see Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 185–86 (1951) (stating that loss of future opportunity to obtain government employment due to a finding of disloyalty without a hearing is a violation of due process) (Jackson, J, concurring), Plaintiffs have failed to allege how they have indeed suffered such an injury.  They reveal their annual income from government work but do not state that this income has declined. Opp'n at 12; Pls.' Exh. 4, ¶ 26.  They indicate how much they earn by conducting hospital surveys, but they do not indicate that these revenues have fallen.  Opp'n at 13; Pls.' Exh. 4, ¶ 25. They state that their reputation was "spotless," but fail to show that it is now anything less than spotless.  Opp'n at 12.  Since Plaintiffs cannot show that any constitutional violation occurred, Mr. Scully is entitled to summary judgment based on the first prong of qualified immunity analysis on this claim as well.

### D.  The APA and Administrative and Statutory Violations

While Plaintiffs contend that they are entitled to relief not only for constitutional violations but for APA, administrative, and statutory violations, they fail again to back up their claims.  In fact, Plaintiffs flatly concede that the APA claim cannot stand on a *Bivens* action, *see* Def.'s Memo at 23; Opp'n at 16, so dismissal of that claim is appropriate.

As for the administrative and statutory violations, the Complaint fails to enumerate the alleged violations or the source of the governing law.  Plaintiffs again fail to clarify any such claims in the Opposition.  Therefore, since no specific statutory or administrative violations have been asserted, any such claims are dismissed.

*E.  Prayers for Relief*

Plaintiffs set forth three prayers for relief in the Complaint, requesting damages, a declaratory judgment, and injunctive relief (in the alternative).  Compl. at 5–8.  The Court granted summary judgment for Defendant on all of Plaintiff's claims; consequently, all of Plaintiffs prayers for relief are denied.

*F.  Discovery under Rule 56(f)*

Plaintiffs attached the affidavit of Adam Augustine Carter, their attorney, to their Opposition, pursuant to Federal Rule of Civil Procedure 56(f).  Pls.' Exh. 1, ¶¶ 1, 2.  In their Opposition, they state that "the Plaintiffs are not able to present by affidavit or deposition all the facts essential to justify Plaintiffs' opposition, and [are] seeking leave of the Court to take discovery in order to do so."  Opp'n at 1.  The first argument Plaintiffs raise in their pleadings for why they seek 56(f) discovery is to prove their competitors fear of retaliation from Mr. Scully.  Opp'n at 15.  Attorney Carter asserts in his affidavit that Gallup's competitors were unwilling to swear out affidavits about their meetings with Mr. Scully.  Pls.' Exh. 1, ¶ 7.  Attorney Carter concludes in his affidavit that this unwillingness to submit affidavits correlates to a fear of retaliation from Mr. Scully.  *Id.*  This Court notes that whether or not Plaintiffs' competitors fear retaliation from Mr. Scully is simply not relevant to the issue at bar: whether Mr. Scully retaliated against Plaintiffs.  Additional discovery to determine whether Plaintiffs' competitors have been retaliated against or fear retaliation has no bearing on whether Plaintiffs' have suffered an injury.

The second reason Plaintiffs claim they need Rule 56(f) discovery is because "[w]ithout discovery there is no way to know whether or not Gallup has been 'black listed' or debarred by

Scully or CMS from government contracting." Opp'n at 12. In its pleadings and exhibits, Plaintiffs merely speculate that they have lost opportunities as a result of the email exchange with Mr. Scully. Plaintiffs assert that their annual income from government contracts is $18 million. Opp'n at 12; Pls.' Exh. 4, ¶ 26. If they had been black listed or debarred, presumably their annual income from government contracts would have declined. There is no evidence presented that this has occurred. There is no indication that Plaintiffs have been denied any government contract for any reason, let alone an improper one. Plaintiffs are merely speculating that they might be black listed or debarred, but from the evidence presented it has not yet happened. Plaintiffs fail to support their claim that they need Rule 56(f) discovery; therefore the request is denied.

## IV: CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is granted on the grounds that Plaintiffs have not demonstrated that their constitutional rights were violated in any way by Defendants.


Date:   October 5, 2005


                              _____/s/_____
                              COLLEEN KOLLAR-KOTELLY
                              United States District Judge

14